UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: ) | Bankr. No. 04-41113 | |
| ) | Chapter 7 | |
| STEPHEN J. MCGREEVY ) | | |
| ) | | |
| and ) | | |
| ) | | |
| SUSAN S. MCGREEVY, ) | | |
| ) | | |
| Debtors. ) | | |
| ) | | |
| JOHN S. LOVALD, TRUSTEE, ) | Adv. No. 07-4050 | |
| ) | | |
| Plaintiff, ) | | |
| -vs- ) | | |
| ) | DECISION RE:  SUBROGATION | |
| STEPHEN J. MCGREEVY, ) | RIGHTS HELD BY DEFENDANT | |
| SUSAN S. MCGREEVY, ) | WELLMARK BLUE CROSS | |
| AVERA MCKENNAN HOSPITAL, ) | BLUE SHIELD OF SOUTH DAKOTA | |
| WELLMARK BLUE CROSS BLUE ) | | |
| SHIELD OF SOUTH DAKOTA, ) | | |
| and UNITED FIRE GROUP, ) | | |
| ) | | |
| Defendants. ) | | |

The matter before the Court is Trustee-Plaintiff John S. Lovald's Complaint to Determine Extent and Priority of Liens.  This decision deals with his complaint only as it relates to Defendant Wellmark Blue Cross Blue Shield of South Dakota's subrogation claim.  This is a core proceeding under 28 U.S.C. § 157(b)(2). This decision and subsequent order shall constitute the Court's findings and conclusions under Fed.R.Bankr.P. 7052.  As set forth below, the settlement funds received by Trustee-Plaintiff Lovald arising from the subject July 26, 2004 accident are not estate property to the extent of Defendant Wellmark Blue Cross Blue Shield of South Dakota's subrogation claim arising from medical debts it paid or is obligated to pay on Debtor Stephen McGreevy's behalf.

I.

Trustee-Plaintiff John S. Lovald ("Trustee Lovald") and Defendant Wellmark Blue Cross Blue Shield of South Dakota ("Wellmark") have stipulated Stephen J. McGreevy

-2-

("McGreevy") was involved in a car accident on July 26, 2004. As a result of the accident, McGreevy sustained certain personal injuries requiring medical care and prescription drugs. At the time of the accident, McGreevy had health care coverage through Wellmark pursuant to a "Blue Select" Benefits Certificate and drug benefit coverage through Wellmark pursuant to a "Blue Rx" Benefits Certificate. On behalf of McGreevy and pursuant to the health insurance policy, Wellmark paid $2,682.46 to medical care providers and for prescription drugs for the treatment of McGreevy's personal injuries proximately caused by the accident.[1] All payments but one were made by Wellmark after August 27, 2004, the date McGreevy and his wife Susan S. McGreevy filed a joint chapter 7 petition in bankruptcy. The one pre-petition payment made by Wellmark was $14.46 for a prescription. The post-petition payments by Wellmark on McGreevy's behalf for post-petition medical services or prescriptions totaled $2,668.00.

This Court approved, on July 31, 2007, a settlement of $38,534.95 for McGreevy's personal injury claim from the accident.[2] After the fees for the attorney employed by the estate to handle the personal injury claim ($13,959.12) and the

---

[1] The payments made by Wellmark were less than the sums that had been billed. On the parties' joint exhibit, the amount paid by Wellmark is described as the "Amount Settled." Trustee Lovald and Wellmark did not advise the Court through their stipulated facts whether the portion of the "Bill Charged" that Wellmark did not pay remains an obligation owed by Debtors or the bankruptcy estate. One of Wellmark's post-petition payments was to Defendant Avera McKennan Hospital on October 13, 2006. The hospital had billed $2,099.00, but was paid only $455.20 as the "Amount Settled."

[2] In the main case, Bankr. No. 04-41113, Trustee Lovald's motion to approve the settlement (doc. 26), as well as the attendant fee application by the personal injury litigation attorney (doc. 27), stated the gross settlement amount was $38,534.95. When the order was entered (doc. 52), the amount was stated at $38,594.35. The Court will use $38,534.95 for purposes of this adversary proceeding. If the order is incorrect and if a party deems it worthwhile, that party may file a motion to correct the figure in the settlement order in Bankr. No. 04-41113.

-3-

amount Debtors have claimed exempt ($3,596.00) are deducted, the remaining balance of the settlement proceeds is $20,979.83.

Trustee Lovald and Wellmark presented three documents by stipulation: the two insurance policies and a statement of the medical claims Wellmark paid on McGreevy's behalf. McGreevy's "Blue Select" policy with Wellmark provided, *inter alia*, once McGreevy "receive[d] benefits under this certificate arising from an illness or injury, [Wellmark assumed] any legal right [McGreevy had] to collect compensation, damages, or any other payment related to the illness or injury, including benefits from . . . [t]he responsible person's insurer." Under the policy, McGreevy could not "compromise, settle, surrender, or release any claim or right of recovery…, without getting [Wellmark's] written permission." The policy also provided McGreevy "must reimburse [Wellmark] to the extent of benefit payments made under this certificate if payment is received from the other [responsible] party or parties[,]" and "[t]he amount of [Wellmark's] subrogation interest shall be paid first from any funds recovered on your behalf from any source, without regard to whether you have been made whole or fully compensated for your losses." The prescription drug policy had a similar subrogation provision.

The record in the related main case, Bankr. No. 04-41113, also establishes Wellmark received notice of Trustee Lovald's proposed settlement through counsel. Wellmark did not object to the proposed settlement; others did. On July 26, 2007, Trustee Lovald's proposed settlement was approved as to the amount, but the Court directed the "[r]ights or interests in the settlement proceeds shall be determined by subsequent appropriate adversary proceedings." The attendant order entered July 31, 2007 reserved ruling on the interests of the objecting parties and the subrogation claimants.

On August 10, 2007, Trustee Lovald commenced an adversary proceeding against several defendants, including Wellmark, and asked the Court to sort out the various interests in the settlement funds. As to Wellmark, Trustee Lovald said:

> Defendant Wellmark Blue Cross Blue Shield is asserting a subrogation interest in the settlement proceeds, superior to the bankruptcy estate's interest, in the amount of $2,662.46, for post petition medical payments it made on behalf of Stephen McGreevy, pursuant to its insurance contract with Stephen McGreevy.
> . . . .
> That none of the claims referenced in paragraphs X through XIII were of record when the bankruptcy was filed, and Trustee's interest in the proceeds is superior to those claims pursuant to 11 USC 544 (a)(2).

In its answer, Wellmark admitted its interest was not filed in any public record pre-petition but denied the trustee's interest in the settlement proceeds under 11 U.S.C. § 544(a)(2) was superior to its subrogation interest. It asked to be paid $2,667.46 from the settlement proceeds.[3]

Based on their briefs, the parties, though perhaps reluctantly so by Trustee Lovald, agreed the settlement proceeds, to the extent of the $14.46 Wellmark paid pre-petition for a prescription, did not become property of the bankruptcy estate. The Court concurs. The tougher, remaining issue is whether the settlement funds necessary to make Wellmark whole for the post-petition payments it made related to the July 26, 2004 accident are also excluded from property of the estate.

Wellmark argues it has a constructive trust on the settlement funds for its post-petition payments under S.D.C.L. § 55-1-11 and the funds in trust are excluded from property of the estate under 11 U.S.C. § 541(d) as property in which Debtors held only legal title and not an equitable interest on the petition date. Trustee Lovald challenges the Bankruptcy Court's ability to impose a constructive trust for post-

---

[3] In its answer, Wellmark said its subrogation claim was $2,667.46, $5.00 higher than the $2,662.46 Trustee Lovald had in his complaint. The parties stipulated Wellmark has paid $2,682.46 to medical care providers and for prescription drugs.

petition payments and the appropriateness of doing so at this time.

II.

When a debtor files a petition in bankruptcy, all his legal and equitable interests are transferred to the bankruptcy estate. 11 U.S.C. § 541(a). While state law determines the nature and extent of a debtor's interest in property, *Butner v. United States*, 440 U.S. 48, 55 (1979), § 541 dictates to what extent the debtor's interest becomes property of the bankruptcy estate. *Lindquist v. JNG Corp. (In re Lindell)*, 334 B.R. 249, 253 (Bankr. D. Minn. 2005)(citing *N.S. Garrott and Sons v. Union Planters National Bank (In re N.S. Garrott and Sons)*, 772 F.2d 462, 466 (8th Cir. 1985)). Section 541(a) defines property of the estate broadly, and encompasses conditional, future, speculative, and equitable interests of the debtor. *U.S. ex rel. Gebert v. Transport Administrative Services*, 260 F.3d 909, 913 (8th Cir. 2001)(cites therein).

Property of the bankruptcy estate includes all causes of action the debtor could have brought at the time of the petition, which the case trustee, under 11 U.S.C. § 704, then has standing to assert. *Moratzka v. Morris (In re Senior Cottages of America, L.L.C.)*, 482 F.3d 997, 1001 (8th Cir. 2007) (citing *Mixon v. Anderson (In re Ozark Rest. Equip. Co.)*, 816 F.2d 1222, 1225 (8th Cir. 1987)); 11 U.S.C. § 323 (trustee, as representative of the estate, has capacity to sue and be sued). The trustee stands in the debtor's shoes and may not assert interests or rights greater than what the debtor himself possessed on the petition date. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 and nn. 8, 9 (1983); *Drewes v. Vote (In re Vote)*, 276 F.3d 1024, 1026 (8th Cir. 2002); and *Constellation Dev. Corp. v. Dowden (In re B.J. McAdams, Inc.)*, 66 F.3d 931, 935 (8th Cir. 1995).

As this Court noted in *In re David L. and Sharon R. Klundt*, Bankr. No. 05-42197, slip op. at 12 (Bankr. D.S.D. March 3, 2008), § 541(d) essentially provides

-6-

whenever an interest in property is limited in a debtor's hands, it is equally limited in the hands of the bankruptcy estate. *Ramette v. Digital River, Inc. (In re Graphics Technology, Inc.)*, 306 B.R. 630, 634 (B.A.P. 8th Cir. 2004). One such limiting interest recognized in South Dakota is a subrogation interest held by an insuror. *Schuldt v. State Farm Mutual Automobile Ins. Co.*, 238 N.W.2d 270, 271 (S.D. 1975). As discussed therein, an insuror may be entitled to subrogation either by contract or in equity for the amount of the indemnity paid. *Id*.

In this adversary proceeding, the burden of establishing a particular asset is property of the bankruptcy estate rests with Trustee Lovald. *See Evans v. Robbins*, 897 F.2d 966, 968 (8th Cir. 1990) (cites therein), and *DeBold v. Case (In re Tri-River Trading, LLC)*, 329 B.R. 252, 263-64 (B.A.P. 8th Cir. 2005), *aff'd*, 452 F.3d 756 (8th Cir. 2006). The burden shifts to Wellmark to show the estate's interest in the settlement funds is limited by its subrogation interest. *Tri-River Trading*, 329 B.R. at 263.

III.

The Court concludes the bankruptcy estate's interest in the settlement funds is limited by Wellmark's subrogation interest. Based on the provisions in the Wellmark policies, it is clear Debtors' interest in the settlement funds was limited by Wellmark's right to be reimbursed from any recovery by the alleged tort-feasor. Thus, the estate's interest in the settlement funds is equally limited. *See Farmers Ins. Group v. Krommenhoek (In re Hiatt)*, 2000 WL 33712218 (Bankr. D. Idaho June 30, 2000); *Sheils v. City of Wilkes-Barre (In re Cole)*, 344 B.R. 44 (Bankr. M.D. Pa. 2005); and *In re Squyres*, 172 B.R. 592 (Bankr. C.D. Ill. 1994).

The Court further concludes the petition date did not alter the extent of Wellmark's subrogation interest. That is, even if Wellmark had not paid any accrued

medical claims by the petition date, its interest in the prospective settlement funds must still be recognized to the extent of all medical claims it has paid or may pay arising from the July 26, 2004 accident. To hold otherwise would allow a bankruptcy debtor's chosen petition date to alter the impact of the subrogation interest. Since McGreevy could not manipulate, to his benefit, Wellmark's subrogation interest outside bankruptcy, the Court cannot countenance a different result when Trustee Lovald stepped into Debtor Stephen McGreevy's shoes on the petition date. *French v. Frey (In re Bergman)*, 467 F.3d 536, 538 (6th Cir. 2006) (subrogation rights conferred by contract are not affected by the Bankruptcy Code or the bankruptcy proceedings of the insured).

The Court recognizes this conclusion means the bankruptcy estate and any subrogated insuror are joint interest holders when a chapter 7 debtor's personal injury claim needs to be litigated or mediated post-petition. *See Bowen v. American Family Ins. Group*, 504 N.W.2d 604, 605-06 (S.D. 1993) (quoting therein *Parker v. Hardy*, 41 N.W.2d 555, 556 (S.D. 1950) (subrogated interest may not be split from the insured's cause of action against a tort-feasor). The case trustee and insuror will have to work cooperatively and may have to share costs in bringing the personal injury action forward.[4] *Bowen,* 504 N.W.2d at 605-07 (subrogated interest holder must bear proportionate share of costs of recovery). Their task in determining each party's respective interest in the resulting settlement funds or judgment amount will be further complicated because the debtor's total medical claims may not yet be known. To the

---

[4] McGreevy's "Blue Select" policy with Wellmark provided Wellmark would "not be liable for payment of any share of attorneys' fees or other expenses incurred in obtaining recovery, except as expressly agreed in writing." The Court does not know if any such writing exists and so cannot ascertain Wellmark's liability for any of the legal fees and other costs incurred by the estate in reaching the settlement. *See infra* note 6.

extent treatment covered by the insurance policy is continuing, *i.e.*, if the policy limits have not been reached, the parties will need to estimate the amount of reimbursable post-petition medical claims or ask the Court to do so through an adversary proceeding to determine property of the estate. *See* Fed.R.Bankr.P. 7001(2)( interests in property determined through an adversary proceeding). All parties, including the debtor, will need to be watchful to ensure any settlement does not prematurely relieve the insuror from paying valid future medical claims. *See Hart v. State Farm Mutual Automobile Ins. Co.*, 248 N.W.2d 881, 883-84 (S.D. 1976).

The result reached today fosters precisely what the equitable and contractual doctrines of subrogation are designed to foster. There is no "double recovery" by Debtors and the bankruptcy estate from both the insurance proceeds and the settlement funds for McGreevy's pre-petition injuries, and the party that should pay for the injuries – the tort-feasor or his or her insuror – is the one who is paying the resulting medical claims. *See In re Cupp*, 383 B.R. 84, 89 (Bankr. E.D. Tenn. 2008).

The Court does not determine herein whether Wellmark had on the petition date, or may be given post-petition, a constructive trust on the settlement funds. Wellmark had a contractual subrogated interest in the settlement funds, and South Dakota common law would also give Wellmark an equitable subrogated interest in those funds. Thus, the thorny issue of the interplay between constructive trusts and § 541 need not be addressed in this adversary proceeding. *See, e.g., First American Title Ins. Co. v. Lett (In re Lett)*, 238 B.R. 167 (Bankr. W.D. Mo. 1999)(discussion of the imposition of constructive trusts in this circuit).

The Court notes the parties did not stipulate whether 11 U.S.C. § 509(a) applies, and the parties did not identify any state subrogation statutes that may apply. Since they did not travel those legal roads, the Court did not either.

Were applicable state law or the insurance contract provisions different, some other result might follow. *See, e.g., Crocker v. Calderon (In re Calderon),* 363 B.R. 537, 541 (Bankr. M.D. Tenn. 2003) (in Tennessee, the right of subrogation does not arise until the insured has been made whole, and this requirement cannot be avoided by contract); *In re White*, 297 B.R. 626, 634 (Bankr. D. Kan. 2003)(an insuror's statutory right of subrogation accrues or vests only when there has been a recovery by the insured); *Minnesota Trust Co. of Austin v. Yanke (In re Yanke)*, 230 B.R. 374, 378 (B.A.P. 8th Cir. 1999)(under Minnesota law, a surety's right of subrogation remains inchoate until payment is made, but when payment is made, the surety becomes entitled to pursue its cause of action in subrogation). The Court's decision, however, must acknowledge the absence of a controlling statute specifically governing this subrogation claim or a "made whole" provision in either the subject insurance policies or definitive state law.[5] S*ee Met Life Auto and Home Ins. Co. v. Lester,* 719 N.W.2d 385 (S.D. 2006); *Julson v. Federated Mutual Ins. Co.*, 562 N.W.2d 117 (S.D. 1997).

The Court presumes McGreevy has now incurred all medical claims related to the July 26, 2004 accident. To the extent those medical claims were covered by his Wellmark policies, that total sum is excluded from the bankruptcy estate's interest in the settlement funds. Wellmark should also proportionately bear the attorneys' fees and costs associated with the settlement to the extent of prescriptions paid or to be

---

[5] The "health care" policy with Wellmark contained a specific provision saying the policy holder did not have to be made whole before Wellmark's subrogation interest had to be recognized. The prescription drug policy impliedly contained a similar requirement since Wellmark's subrogation interest was based on benefits paid, not benefits paid after the insured was made whole.

-10-

paid, and if it agreed to do so in writing, to the extent of other medical claims paid.[6] If the parties cannot agree on the final amount of Wellmark's share of the settlement within 15 days of the entry of this Decision, they shall request an evidentiary hearing by motion.  Otherwise, Trustee Lovald shall submit an agreed order and judgment appropriately dividing the settlement funds between the bankruptcy estate and Wellmark.

Dated this 16th day of May, 2008.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

On the above date, a copy of this document was mailed or faxed to the parties shown on the Notice of Electronic Filing as not having received electronic notice.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

[6] Only the "Blue Select" policy provides Wellmark is not liable for any share of attorneys' fees or other expenses incurred in obtaining a recovery unless it so agreed in writing.  The prescription drug policy does not appear to include a similar limitation. *See supra* note 4.  *See Bowen v. American Family Ins. Group*, 504 N.W.2d 604, 607 (S.D. 1993)(insuror may contract away its responsibility to share in proportionate share of attorneys' fees incurred by insured in reaching a settlement).